UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER AHN,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>DAVID M. SINGER,<br><br>　　　　　Respondent. | Case No. 2:22-cv-04320-FLA (JPRx)<br><br>**ORDER TO SHOW CAUSE RE: WHETHER PROBABLE CAUSE SUPPORTING EXTRADITION EXISTS IN LIGHT OF ONGOING HOSTILITIES BETWEEN THE UNITED STATES AND NORTH KOREA** |

1

**ORDER**

On May 9, 2022, Magistrate Judge Rosenbluth issued the Reluctant Certification of Extraditability ("Certification") in *United States v. Christopher Philip Ahn*, 2:19-cv-05397-FLA (JPRx) ("Case 19-5397"), in which she concluded she was required to certify Petitioner Christopher Philip Ahn's ("Ahn" or "Petitioner") extradition to the Kingdom of Spain ("Spain"). Case 19-5397, Dkt. 233. In issuing the Certification, Magistrate Judge Rosenbluth held that Respondent the United States of America ("Respondent" or the "government") presented sufficient competent evidence to establish probable cause supporting Petitioner's extradition for the crimes of breaking and entering, illegal restraint, causing injuries, and threats under Spanish law. *Id.* at 19-28, 50.

On June 23, 2022, Petitioner filed a Petition for Writ of Habeas Corpus in this action ("Petition"), requesting the court deny extradition on grounds including that the Magistrate Judge erred in finding probable cause sufficient to support extradition.[1] Dkts. 1, 1-1. The parties have completed written briefing regarding the Petition. Dkts. 14, 30, 35.

"[E]xtradition is a matter of foreign policy entirely within the discretion of the executive branch, except to the extent that the statute interposes a judicial function." *Vo v. Benov*, 447 F.3d 1235, 1237 (9th Cir. 2006). A United States citizen may be subject to extradition for offenses committed in another country, "provided that an extradition treaty exists between the United States and the country seeking extradition and the crime charged is covered by the treaty." *Id.* (citing 18 U.S.C. § 3184). For an individual to be extradited, a judicial officer must determine there is "'evidence sufficient to sustain the charge under the provisions of the proper treaty or convention,' or, in other words, whether there is probable cause." *Id.* (quoting 18

---

[1] Decisions of an extradition court are not directly reviewable but may be challenged collaterally by a petition for habeas corpus. *Barapind v. Enomoto*, 400 F.3d 744, 748 n. 5 (9th Cir. 2005) (en banc) (per curiam).

U.S.C. § 3184). Probable cause means a "fair probability," given the totality of the evidence, that the suspect has committed the charged crime, *Garcia v. County of Merced*, 639 F.3d 1206, 1209 (9th Cir. 2011), and the burden of proving its existence rests with the country seeking extradition, *see Barapind*, 400 F.3d at 747 (9th Cir. 2005) ("Certification of extradition is lawful only when the requesting nation has demonstrated probable cause to believe the accused person is guilty of committing the charged crimes.").

Under the doctrine of "dual criminality," an accused person "may be extradited only if the alleged criminal conduct is considered criminal under the laws of both the surrendering and requesting nations.'" *United States v. Anderson*, 472 F.3d 662, 665 n. 1 (9th Cir. 2006); *Quinn v. Robinson*, 783 F.2d 776, 783 (9th Cir. 1986). "[T]o satisfy the 'dual criminality' requirement, each element of the offense purportedly committed in a foreign country need not be identical to the elements of a similar offense in the United States. It is enough that the conduct involved is criminal in both countries." *In re Extradition of Russell*, 789 F.2d 801, 803 (9th Cir. 1986).

It is unclear whether the conduct for which Petitioner has been accused is considered criminal in the United States. Petitioner Ahn stands accused of engaging in conduct against the embassy and staff of the Democratic People's Republic of Korea ("North Korea"), located in Spain. Case 19-5397, Dkt. 233 at 4-5, 20-27. The United States, however, has been involved in a military conflict with North Korea since President Harry Truman committed American troops to Korea in June 1950, in support of United Nations Security Council Resolutions during the Korean War. Although an officer of the United States Army signed the Armistice Agreement for the Restoration of the South Korean State on July 27, 1953,[2] this agreement only ceased hostilities between the armed forces involved in the conflict and established a

---

[2] A copy of the Armistice Agreement is available online at: https://www.archives.gov/milestone-documents/armistice-agreement-restoration-south-korean-state.

3

demilitarized zone between North Korea and the Republic of Korea ("South Korea").[3] North Korea and the United States have never formally declared peace or entered into a peace treaty, and the United States and North Korea do not currently maintain diplomatic relations. *See* Dkt. 223 at 5-6 n. 6 (recognizing the United States "has no North Korean embassy nor any diplomatic relations at all with [North Korea].").

North Korea and South Korea have continued to exchange missile and artillery fire during the intervening years.[4] On November 20, 2017, the United States designated the North Korean government a State Sponsor of Terrorism.[5] Congress has recognized that the United States government should provide support to North Korean defectors and refugees in the North Korean Human Rights Act of 2004, 22 U.S.C. §§ 7801-7846, and encouraged the government to take action to aid North

---

[3] In December 2021, news outlets reported that South Korea announced it and the United States agreed "in principle" on a draft declaration to formally end the Korean War, but North Korea did not agree to participate in the process. *E.g.*, Mitch Shin, South Korea and US Agree on Draft End-of-War Declaration 'In Principle', THE DIPLOMAT, December 29, 2021, available at: https://thediplomat.com/2021/12/south-korea-and-us-agree-on-draft-end-of-war-declaration-in-principle/. As recently as September 24, 2021, news outlets reported that Ri Thae Song, Vice-Minister of Foreign Affairs of North Korea, issued a press release stating "[t]he true situation proves that the adoption of the declaration of the termination of the war is something premature." William Gallo, North Korea Gives Mixed Signals on End of War Proposal, VOICE OF AMERICA, September 24, 2021, available at: https://www.voanews.com/a/north-korea-gives-mixed-signals-on-end-of-war-proposal/6243889.html.

[4] *E.g.*, South Hits Back as North Korea Fires Most Missiles in a Day, BBC, November 2, 2022, available at: https://www.bbc.com/news/world-asia-63481183; Choe Sang-Hun, Tracking North Korea's Record Number of Missile Launches, N.Y. TIMES, Dec. 23, 2022, available at: https://www.nytimes.com/article/north-korea-missile-launches.html.

[5] U.S. Dep't of State, State Sponsors of Terrorism, available at: https://www.state.gov/state-sponsors-of-terrorism/.

Koreans fleeing that country.[6] Similarly, the United States Department of State has issued multiple statements in support of North Korean refugees and defectors.[7]

While Magistrate Judge Rosenbluth found that "probable cause exists to believe that Ahn committed the crimes of breaking and entering, illegal restraint, causing injuries, and threats under Spanish law," Case 19-5397, Dkt. 223 at 50, the parties did not address whether Petitioner's conduct is considered criminal in the United States, in light of the ongoing hostilities that exist between the United States and North Korea, the lack of a peace treaty, and North Korea's sponsorship of terrorism. *See id.* at 5-6 n. 6 (recognizing "the specific charges in Spain's request for extradition are framed broadly, without tying the crimes to the specific location where they allegedly took place," namely the North Korean embassy in Madrid). It is unclear, therefore, whether Petitioner's conduct would constitute a violation of United States law, regardless of whether he acted in support of an attempt to aid a North Korean citizen's defection, as he contends, or whether he acted to steal information and computers he turned over to the Federal Bureau of Investigation ("FBI") in an attempt to undermine the North Korean government, as the United States has argued. *See id.* at 3.

Respondent identified the laws it believes apply with respect to the issue of dual criminality in Appendix B to the government's memorandum in support of extradition. Dkt. 30 at 34; Case 19-5397, Dkt. 119-2. In particular, the government cited 18 U.S.C. § 112(a) (protection of foreign officials, official guests, and internationally protected persons), and § 1201(a)(4) (kidnapping of a foreign official, an internationally protected person, or an official guest). It is unclear whether the

---

[6] The North Korean Human Rights Act of 2004 was most recently reauthorized in the North Korean Human Rights Reauthorization Act of 2017, Pub. L. No. 115-198, 132 Stat. 1519.

[7] *E.g.*, U.S. Dep't of State, Supporting Human Rights in North Korea Press Statement (Sept. 30, 2022), available at: https://www.state.gov/supporting-human-rights-in-north-korea/.

alleged North Korean officials here would qualify for protection under the identified statutes given the ongoing conflict between North Korea and the United States, the lack of relations between the two nations, and North Korea's status as a state sponsor of terrorism. *See* 18 U.S.C. § 1116(b)(3)-(4), (6).

Accordingly, the court ORDERS the parties to show cause in writing ("OSC") whether probable cause exists that Petitioner Christopher Ahn committed conduct that would be considered criminal under United States law, in light of the ongoing hostilities and unique circumstances surrounding the relationship between the United States and North Korea. Respondent shall file its response to the OSC within 30 days of this Order. Petitioner may file an opposition to Respondent's response within 30 days of the government's response, and Respondent may file a reply within 15 days of any opposition. The court, thereafter, will determine whether to schedule a hearing on the OSC and the Petition.

IT IS SO ORDERED.

Dated: January 9, 2023

FERNANDO L. AENLLE-ROCHA
United States District Judge