E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division
JOHN J. LULEJIAN (Cal. Bar No. 186783)
Assistant United States Attorney
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0721
    Facsimile: (213) 894-0141
    E-mail: John.Lulejian@usdoj.gov

Attorneys for
UNITED STATES OF AMERICA
Acting on Behalf of Respondent
DAVID M. SINGER, U.S. Marshal

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER PHILIP AHN, <br><br> Petitioner, <br><br> v. <br><br> DAVID M. SINGER, U.S. Marshal,, <br><br> Respondent. | No. 2:22-cv-04320-FLA (JPRx) <br><br> UNITED STATES' SUMMARY OF NINCIRCUIT CASELAW REGARDING CONTRADICTORY AND EXPLANATORY EVIDENCE IN EXTRADITION MATTERS; MEMORANDUM OF POINTS AND AUTHORITIES <br><br> Assigned to the Honorable Fernando L. Aenelle-Rocha |

The United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney John J. Lulejian, acting on behalf of Respondent David M. Singer, U.S. Marshal, hereby submits its Summary of Ninth Circuit Caselaw Regarding Contradictory and Explanatory Evidence in Extradition Matters.

\\

\\

\\

\\

This summary is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 22, 2024            Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, National Security Division


 */s/ John J. Lulejian*
JOHN J. LULEJIAN
Assistant United States Attorney

Attorneys for
UNITED STATES OF AMERICA
Acting on Behalf of Respondent
DAVID M. SINGER. U.S. Marshal

**MEMORANDUM OF POINTS AND AUTHORITIES**

On January 26, 2024, this Court held a hearing on Petitoner CHRISTOPHER PHILIP AHN's Petition for Writ of Habeas Corpus and the Court's Order to Show Cause Re: Whether Probable Cause Supporting Extradition Exists in Light of Ongoing Hostilities Between the United States and North Korea. (*See* Docket No. 54.) At the hearing and in its prior filings, the United States argued that the extradition court did not err when it excluded Petitioner's declaration and other evidence he sought to admit at his extradition hearing. The Court invited the parties to prepare briefs, less than ten pages in length, identifying cases that have distinguished between contradictory and explanatory evidence. (*See* Docket No. 57 at 82-83.) The United States hereby summarizes the legal standard set forth by the Ninth Circuit and provides a comprehensive selection of cases from within the Ninth Circuit applying that standard.[1]

As the United States noted at the hearing, the en banc decision in *Santos v. Thomas*, 830 F.3d 987 (9th Cir. 2016) (en banc), is the leading case in the Ninth Circuit that discussed the difference between contradictory and explanatory evidence. In that decision, the Court of Appeals acknowledged that "[t]he difference between "explanatory" and "contradictory" evidence is easier stated than applied. The federal courts have struggled to distinguish between the two." 830 F.3d at 992 (citations omitted). Nonetheless, the appellate court attempted to articulate the difference, holding that " 'explanatory' evidence is evidence that 'explains away or completely obliterates probable cause,' whereas contradictory evidence is that which 'merely controverts the existence of probable cause, or raises a defense.'" *Id.* (quoting *Mainero v. Gregg*, 164 F.3d 1199, 1207 (9th Cir. 1999)). The court further described "'contradictory' evidence as evidence 'the credibility of which could not be assessed without a trial.'" *Id.* at 993

---

[1] The United States does not apply the relevant caselaw to the facts of the above-captioned case in this filing because it understood such analysis to fall outside the scope of the Court's request. Should the Court request such an analysis, or if Petitioner includes such a discussion in his response, the United States respectfully requests permission to file an appropriate reply.

(quoting *Barapind v. Enomoto*, 400 F.3d 749-50 (9th Cir. 2005) (en banc, per curiam)). This means that a fugitive "contesting extradition may not, for example, present alibi evidence, facts contradicting the government's proof, or evidence of defenses like insanity, as this tends to call into question the credibility of the government's offer of proof." *Id.* (citing *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978)). However, while a relator still may testify to things that might explain ambiguities or doubtful elements in the government's case," he or she "may not impeach government witnesses or produce witnesses whose testimony contradicts evidence already offered by the government." *Id.* (quotations and citations omitted). Further, evidence that a statement was "obtained by coercion may be treated as 'explanatory' evidence that is admissible in an extradition hearing." *Id.* at 1008.

Numerous courts within the Ninth Circuit have relied on the standard described in *Santos* to determine what constitutes inadmissible contradictory evidence and admissible explanatory evidence. *See, e.g.*, *Santoyo v. Boyden*, No. 2:23-cv-00447-DJC-JDP, 2023 WL 6314256, at *3 (E.D. Cal. Sept. 28, 2023); *In re Extradition of Mitchel*, No. 21-09073MJ-001-PHX-ESW, 2023 WL 2967258, at *4 (D. Ariz. Apr. 17, 2023); *In re Extradition of Martinez Santoyo*, No. 2:21-mj-125-KJN, 2023 WL 2228285, at *8 (E.D. Cal. Feb. 24, 2023); *Kollmar v. United States Pretrial Services, Northern District*, 642 F. Supp. 3d 982, 996 (N.D. Cal. 2022); *Manrique v. O'Keefe*, No. 21-cv-08395-LB, 2022 WL 1212018, at *12-13 (N.D. Cal. Apr. 22, 2022); *In re Extradition of Gomez*, No. 3:20-mc-01034-YY, 2022 WL 1026739, at *8 (D. Ore. Apr. 6, 2022); *United States v. Kollmar*, No. 19-mj-70677-MAG-1 (KAW), 2021 WL 179606, at *7 (N.D. Cal. Jan. 19, 2021); *In re Extradition of Ameen*, No. 2:18-mj-152-EFB, 2019 WL 2208220, *8-13 (E.D. Cal. May 22, 2019); *In re Extradition of Morales-Hernandez*, No. 1:13-mc-00017-SAB, 2019 WL 1230350, at *7-8 (E.D. Cal. Mar. 15, 2019); *Luna v. O'Keefe*, No. 17-CV-02129-LHK, 2018 WL 784783, at *7, *11-12 (N.D. Cal. Feb. 8, 2019); *In re Extradition of Acevedo*, No. ED CV 16-1766-R (KS), 2017 WL 3491749, at*8-10 (C.D.

1  Cal. Aug. 11, 2017); *In re Extradition of Lara Gutiérrez*, No. CV 16-05061-PSG (DFM),
2  2017 WL 82321237, at *4 (C.D. Cal. Feb. 22, 2017).

3       For example, in *Acevedo*, the extradition court rejected a relator's attempt to
4  introduce two declarations that sought to raise a defense to the criminal charges against
5  him.  There, a relator sought for murder in Mexico attempted to introduce a declaration
6  that included a claim that the victim, whom the declarant alleged was involved with a
7  gang, had shouted threats at the realtor.  2017 WL 3491749, at *8.  The court declined to
8  admit the declaration because the declarant's statements "appear[ed] to contradict the
9  testimony of witnesses that [the prosecutor] interviewed in Mexico on the day after the
10  killing, and seem[ed] designed to establish a self-defense narrative to explain [the
11  relator's] actions." *Id*.  The court concluded that "[t]his is just the type of evidence that
12  is not admissible in an extradition proceeding." *Id*.

13       The extradition court also evaluated another declaration from the relator that
14  alleged a witness's statement identifying him as the murderer was obtained by coercion,
15  and that the victim was a gang member and the aggressor in the attack that led to his
16  death. *Id*. at *8-9.  The court observed that, while the allegations of coercion were
17  admissible, the statements about the victim were a reiteration of his prior statement and
18  thus, contradictory and inadmissible. *Id*.

19       Similarly, in *Gomez*, the extradition court declined to admit statements from the
20  relator that sought to prove he murdered his son in self-defense in Mexico.  2022 WL
21  1026739, at *8.  In those statements, the relator claimed that immediately before he fired
22  the fatal shots, his son, who allegedly resented him, held a gun in his hands and tried to
23  kill the relator. *See id*.  Relying on the dissent in *Santos*, the relator asserted that the
24  evidence about his son's alleged feelings and conduct was explanatory because it
25  "essentially accepts the substance of the requesting country's evidence in a light that . . .
26  negates or obliterates the inference of guilt." *Id*.  The court, however, disagreed and
27  noted that the relator's quote omitted a critical, dispositive definitional term, namely that
28  the explanatory evidence must be "undisputed evidence." *Id*.  The court observed that

the relator's statements were disputed by two pieces of Mexico's proffered evidence: his son's corpse was found unarmed and another witness recalled the son firing into the air and not at the relator. *Id.* Thus, the court determined that "[t]hose uncontroverted facts [were] in opposition to [the relator's] recollection of events," and thus, "the relator's declaration [was] . . . contradictory and [could not] be considered by the court." *Id.*

In *Manrique*, the district court reviewed the extradition court's decision to exclude evidence offered by the former president of Peru, a relator, charged with bribery. 2022 WL 1212018, at *1. The relator attempted to offer, *inter alia*, a collaboration agreement between the Peruvian prosecutors and a cooperating witness indicating that the cooperating witness received and was forced to return substantial amounts of bribe money. *See id.* at *12. Even though the agreement contradicted the Peruvian government's evidence that the cooperating witness did not benefit from the bribery scheme, the relator claimed that the agreement called the cooperating witness's creditability into question contradictory admissions and explained ambiguities. *See id.* The district court determined, however, that the extradition court properly excluded the agreement because, although "[t]he agreement sheds light on [victim's] motivations and credibility, . . . it contradicts other evidence Peru submitted and does not negate probable cause." *Id.* The district court reached the same conclusion with respect to another agreement the relator sought to introduce because, according to the court, that agreement went to "witness credibility, contradict[ed] Peru's evidence, and [did] not negate probable cause." *Id.*

The district court also agreed with the extradition court's decision to exclude portions of a deposition. The district court concluded that those portions of the deposition, which included an admission by the cooperating witness, were inadmissible because they undermined credibility and were akin to contradictory impeachment evidence. *See id.* Further, the court stated,

> The evidence the [relator] seeks to admit is also unlike recanting statements involving claims that original statements were obtained by torture or

4

>coercion, which the Ninth Circuit has held are admissible in extradition proceedings.  The problem with the [relators'] evidence is that while it may undermine [the cooperating witness's] credibility, it contradicts the government's evidence and does not negate probable cause or undermine the reliability or competence of Peru's evidence.

*Id.* at *13.

In *Martinez Santoyo*, the extradition court determined that a forensic report presented by the fugitive was inadmissible contradictory evidence.  In this case, the relator was charged with homicide with unfair advantage in Mexico and attempted to introduce was a forensic report that indicated the victim had gun residue on his hands.  2023 WL 2228285, at *1.  The relator asserted that this report was explanatory because "it further elaborates on those references in the extradition packet." *Id.* at *8.  Referencing the standard discussed in *Santos* and relying on *Gomez* and *Manrique*, the extradition court disagreed:

>[I]t appears that [the relator's] true purpose in offering this exhibit is to argue that [the victim] himself was armed, which arguably calls into question the "unfair advantage" portion of the charge.  There is no other apparent reason that the defendant wants to "explain" the government's evidence.  Similar to the eyewitness statements, this seems to be a question of fact for Mexican jurors to resolve. . . .  This issue is not one for the court to consider here but is left for trial in Mexico.

*Id.*  The district court that reviewed this decision, determined that the extradition court's "determination was reasonable and not an abuse of discretion."  *Santoyo*, 2023 WL 6314256, at *3.

Similarly, in *Luna*, a Mexican homicide case, the district court upheld the extradition court's decision to exclude forensic documents questioning the victim's cause of death.  2018 WL 784783, at *9.  The extradition court determined that the report was inadmissible because the cause of death put forth by the retained pathologist

contradicted the cause of death listed in the Mexican government's autopsy report. *See id.* at \*10. After the extradition court certified the relator's extradition, he moved for reconsideration on the grounds that two Mexican death certificates offered an alternative cause of death. *See id.* The extradition court, however, refused to reopen the evidence, because the relator's "offer of [the victim's] death certificates amounted to an assertion that the Court should prefer the stated cause of death on the death certificate rather than the discussion in the autopsy," and as a result "the death certificates constituted evidence contradicting the government's offer of proof." *Id.* at \*11 (quotation and citation omitted). The district court agreed and determined that the extradition court did not err when it found that the pathologist report was inadmissible contradictory evidence and that the death certificates inappropriately contradicted the government's proof. *See id.* at \*12.

In *Kollmar*, the district court rejected a relator's challenge to whether his proffered evidence was properly excluded by the extradition court. *See* 642 F. Supp. 3d at 996. The relator, who was charged with rape and indecent assault in Canada, alleged that the extradition court abused its discretion by excluding declarations from community members regarding the relator's character. *See id.*; *see also Kollmar*, at \*7 ("To the extent Defendant seeks to introduce evidence that contradicts [the victim's] credibility, such as his repeated citations to the declarations of 'a great host of respected community members,' this evidence is not permissible because they have no bearing on probable cause, except to contradict [the victim's] statement or description of Defendant's character.")). The district court agreed, noting that the relator "may not . . . produce witnesses whose testimony contradicts evidence already offered by the government." *Kollmar*, 642 F. Supp. 3d at 996 (quoting *Santos*, 830 F.3d at 993).

In *Mitchel*, a relator wanted for murder in Mexico unsuccessfully attempted to introduce an e-mail from the Mexican Regional Attaché Office that purportedly disputed whether Mexican authorities had sufficiently identified him as the person who had committed the crime. 2023 WL 2967258, at \*4. He also sought to introduce evidence

6

that challenged the lack of physical evidence against him and a number of the facts in the Mexican arrest warrant, including the physical description and age of the suspect. *See id.* Nonetheless, the extradition court determined that this evidence was contradictory, and thus, inadmissible: "The . . . email from the Mexican Regional Attaché Office, physical characteristics of the suspect described in the arrest warrant, and purported lack of physical evidence linking [the relator] to the alleged crime constitute 'contradictory' evidence that is not considered in an extradition proceeding." *Id.* (citing *Santos*, 830 F.3d at 1007).

In *Morales-Hernandez*, the extradition court rejected a relator's attempt to introduce three documents that he claimed were explanatory. 2019 WL 1230350, at *7-8. The relator, who was wanted for murder in Mexico, claimed that a witness's death certificate was explanatory evidence because it demonstrated that the witness was no longer alive and unable to participate in any further proceedings. *See id.* at *7. The extradition court disagreed and determined that, while the unavailability of the witness may impact the ability of Mexico to secure a conviction at trial, it did not obliterate probable cause. *See id.* The court further determined that the death certificate"[was] inadmissible in this proceeding as it is not explanatory evidence that would explain or clarify the [the witness's] or any other witnesses' statements made in this matter." *Id.*

The relator also sought to admit a report from an expert retained by his family that purportedly analyzed "the subjective and objective investigation documentation" offered by Mexico. *Id.* at *8. As with the other evidence discussed above, the extradition court declined to admit the report because "the purpose of the report itself demonstrates that it [is] merely contradictory evidence to refute the Government's proof and is not explanatory." *Id.* The court noted that although the relator claimed the "report explain[ed] ambiguities in the evidence or doubtful elements of the Government's case," the extradition court found that "this is merely making a determination regarding credibility and is offered to contradict the Government's case." *Id.* The court

7

determined that the report was contradictory evidence because it did "not obliterate the Government's evidence but present[ed] a different interpretation of that evidence." *Id.*

Finally, the extradition court declined to admit a report relating to a search warrant to apprehend him, which stated that the police did not locate the relator in any of the rooms it searched. *See id.* The court determined that "[w]hile [the relator] seeks to admit this evidence to show that no physical evidence was found linking him to the crime, . . . due to the passage of time since [the relator] fled the jurisdiction, even if the premises were searched and no evidence was found linking him to the crime, it would not explain away or obliterate probable cause." *Id.* (footnote omitted).

In *Lara Gutiérrez*, the extradition court rejected a relator's attempt to introduce evidence that a witness recanted her identification of the relator as the person wanted for murder in Mexico. 2017 WL 82321237, at *3-4. The court held that the evidence of the witness's recantation were "offered to contradict the version of the facts set forth in the statements submitted by the government to establish probable cause. Therefore, by their very nature, evaluating [the witness's] current statements against her past inculpatory statements would require the Court to weight [sic] conflicting evidence, something expressly precluded by the applicable authority." *Id.* at *4 (citing *Barapind*, 400 F.3d at 749).[2]

As set forth above and in accordance with *Santos*, courts in the Ninth Circuit generally exclude evidence offered by a relator that calls into question the accuracy of the facts alleged by the foreign country in support of its criminal charges. Indeed, much of the case law on this issue rejects relators' evidence as contradictory. However, in one case, a court agreed to consider some of the relator's evidence because it may have

---

[2] Because the relator in *Lara Gutiérrez* did not offer evidence that the witness's original statement identifying him as the killer was obtained by coercion or torture, he could not claim that the evidence was admissible because it was explanatory. *See Santos*, 830 F.3d at 1008; *see also In re Extradition of Alfredo Castro Martinez*, No. 5:22-cv-00084-SSS-SHK, 2023 WL 8591501, at *19 (C.D. Cal. Nov. 1, 2023) (admitting recantation evidence alleged to have been obtained by torture or coercion as explanatory).

8

obliterated probable cause on whether the fugitive was present when the charged crime occurred and whether the extradition request contained genuine and authentic documents. *See Ameen*, 2019 WL 2208220, at *10-12.

In *Ameen*, a relator sought by Iraq for premeditated murder sought to introduce character evidence, alibi evidence, evidence of alleged forgery in the extradition request, and impeachment evidence. 2019 WL 2208220, at *8. In a fact-intensive decision, the extradition court ruled that some of the relator's proffered evidence was inadmissible contradictory evidence but also declined to exclude some of the proffered evidence.

Specifically, the extradition court found that evidence of the relator's good character had no direct bearing on the question of probable cause, and thus was inadmissible. *See id.* at *8.

However, the court did not reject outright the relator's evidence of an alleged alibi. There, the extradition court acknowledged that alibi evidence generally was contradictory and thus inadmissible, but it also said that "it would be manifestly unjust to prohibit a relator from presenting evidence that *conclusively* establishes that he could not have committed the crime he is charged with." *Id.* at *10 (emphasis added). Ultimately, the extradition court could not determine at the time whether the evidence obliterated probable cause because "[t]he answer to that question [would] depend not only on the exhibits themselves, but on the arguments and presentations that accompany[ied] them at the extradition hearing." *Id.*

In a similar vein, the extradition court declined to exclude evidence related to the relator's allegations that documents in support of the extradition request had been forged or falsified. The court stated that the relator "should be afforded an opportunity to show, if he can, that the documents supporting his extradition are forged," because "probable cause cannot be met by production of false or forged documents." *Id.* at *12.

With respect to the impeachment evidence, the extradition court did not admit a statement regarding an interview of a third witness who had claimed that that the relator was not present in Iraq at the time of the murder and that the criminal charges had

9

1  stemmed from a familial/tribal conflict. *See id.* at *5, 11. Because Iraq did not include a
2  statement from this witness in its extradition request, the court determined that the
3  witness's "statements [were] purely contradictory and offer[ed] only a different account
4  of how the killing occurred." *Id.*

5      On the other hand, the extradition court ruled that the relator should be allowed to
6  introduce new declarations from two other witnesses who had previously identified the
7  relator as the killer, in which they stated that they were not eyewitnesses to the murder,
8  that they merely related what another eyewitness had said, and that the relator was
9  innocent of the charge. *See id.* at *5, 10. Because of uncertainty around how the
10 witnesses were able to identify the relator as the killer, the court held that the evidence
11 was "more akin to explanatory evidence than recantation evidence," and thus admissible.
12 *Id.* at *10 (footnote and quotation omitted).

13     Finally, the extradition court decided to exclude evidence that attacked the
14 credibility of an eyewitness to the murder. *Id.* at *11-12. However, the court admitted
15 for a limited purpose, stating, "to the extent it is relevant, [it] may be offered for the
16 purposes of demonstrating that [the eyewitness's] statement in the extradition request
17 [was] forged or inauthentic." *Id.* at *12.

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for United States of America certifies that this brief contains <u>3,359</u> words, which complies with the word limit of L.R. 11-6.1.

Dated: February 22, 2024          */s/ John J. Lulejian*
                                              JOHN J. LULEJIAN
                                              Assistant United States Attorney